[753 NYS2d 144]

In the Matter of EDWARD A. ZELINSKY et al., Petitioners, v TAX
APPEALS TRIBUNAL OF THE STATE OF NEW YORK et al.,
Respondents.

Third Department, December 5, 2002

APPEARANCES OF COUNSEL

*Edward A. Zelinsky* and *Doris Zelinsky*, New Haven, Connecticut, petitioners pro se.

*Eliot Spitzer, Attorney General,* Albany (*Andrew D. Bing* of counsel), for Commissioner of Taxation and Finance, respondent.

*Jonathan L. Ensign, Office of Connecticut Attorney General,* Hartford, Connecticut, for Commissioner of the Connecticut Department of Revenue Services, amicus curiae.

## OPINION OF THE COURT

LAHTINEN, J.

The issue before the Court is whether the Department of Taxation and Finance (hereinafter Department) violated the Commerce Clause or the Due Process Clause of the Federal Constitution when they allocated all of the income of a nonresident, petitioner Edward A. Zelinsky (hereinafter petitioner), to New York under the so-called "convenience of the employer" test. The stipulated facts provide in relevant part that, during 1994 and 1995, petitioner was a resident of Connecticut and was employed as a professor of law at Cardozo Law School in New York City. His duties included teaching classes, meeting with students, preparing and grading examinations, writing recommendations for students and conducting scholarly research and writing. During the 28 weeks constituting the two academic semesters in 1994, petitioner spent three days each workweek in New York City teaching classes and meeting with students. He remained in Connecticut two days each workweek performing the balance of his duties. When classes were not in session, petitioner worked exclusively in Connecticut. His work was similarly split between New York and Connecticut in 1995, except that he spent less time in New York because he was on sabbatical leave during the fall semester of 1995.

On the 1994 and 1995 New York nonresident income tax returns filed by petitioner and his wife, petitioner apportioned to New York the percentage of his total salary that reflected the days he was actually present at Cardozo Law School in New York. The Department issued notices of deficiency for

both years, maintaining that petitioner's entire salary from Cardozo Law School was subject to taxation by New York. The deficiencies were sustained following a conciliation conference. At a hearing before an Administrative Law Judge (hereinafter ALJ), petitioners advanced a federal constitutional challenge to the convenience of the employer test, which the Department had relied upon to tax all his income from Cardozo Law School. Petitioners' constitutional challenge was rejected by the ALJ and, thereafter, respondent Tax Appeals Tribunal affirmed the ALJ. This proceeding ensued.

The income of nonresidents is taxed by New York if it is "derived from or connected with New York sources" (Tax Law § 631 [a] [1]). Nonresidents are permitted to apportion their income for work conducted outside New York as provided in the regulations of the tax commission (see Tax Law § 631 [c]). The relevant regulation limits apportionment and allocation pursuant to the "convenience of the employer" test, which states in part that "any allowance claimed for days worked outside New York State must be based upon the performance of services which of necessity, as distinguished from convenience, obligate the employee to out-of-state duties in the service of his employer" (20 NYCRR 132.18 [a]). The Court of Appeals has stated that "[t]he policy justification for the 'convenience of the employer' test lies in the fact that since a New York State resident would not be entitled to special tax benefits for work done at home, neither should a nonresident who performs services or maintains an office in New York State" (Matter of Speno v Gallman, 35 NY2d 256, 259; see Matter of Kitman v State Tax Commn., 92 AD2d 1018, 1019, lv denied 59 NY2d 603). A previous challenge to the convenience of the employer test on the grounds that it violated the Commerce Clause and Due Process Clause was rejected by this Court in Matter of Colleary v Tully (69 AD2d 922).

Petitioners contend that Colleary failed to directly address the arguments raised herein and, further, that decisions subsequent to Colleary by the United States Supreme Court and the New York Court of Appeals point to a conclusion contrary to the holding in that case. The Commerce Clause, which contains an affirmative grant of regulatory power to Congress, has been consistently construed to also include a "negative" or "dormant" aspect that prohibits states from interfering with interstate commerce (see Camps Newfound/Owatonna, Inc. v Town of Harrison, Me., 520 US 564, 571-572; Quill Corp. v North Dakota By and Through Heitkamp, 504 US 298, 309;

*City of New York v State of New York*, 94 NY2d 577, 596). The tax in dispute, while facially neutral regarding interstate commerce, has the effect, based upon the stipulated facts, of resulting in a portion of petitioner's income being taxed both in New York and Connecticut. However, the fact that Connecticut may tax a portion of the same income as New York, causing additional taxation from the combined effect of the laws of the two states, does not necessarily lead to the conclusion that the New York tax violates the Commerce Clause (*see Moorman Mfg. Co. v Bair*, 437 US 267, 277 n 12; *Curry v McCanless*, 307 US 357, 368 ["there are many circumstances in which more than one state may have jurisdiction to impose a tax"]).

A state tax survives a Commerce Clause challenge "when the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State" (*Complete Auto Tr., Inc. v Brady*, 430 US 274, 279; *see Quill Corp. v North Dakota By and Through Hcitkamp, supra* at 310-311). Petitioners' constitutional challenge is limited to the fair apportionment prong of the four-part test set forth in *Complete Auto Tr., Inc. v Brady* (*supra*). The fair apportionment element is analyzed for internal and external consistency (*see Oklahoma Tax Commn. v Jefferson Lines, Inc.*, 514 US 175, 185; *Goldberg v Sweet*, 488 US 252, 261). Petitioners concede internal consistency and, thus, their Commerce Clause argument distills to whether the convenience of the employer test is externally consistent.

Unlike the internal consistency test, external consistency "looks not to the logical consequences of cloning [the taxing statute to all other states], but to the economic justification for the State's claim upon the value taxed, to discover whether a State's tax reaches beyond that portion of value that is fairly attributable to economic activity within the taxing State" (*Oklahoma Tax Commn. v Jefferson Lines, Inc., supra* at 185). It is "essentially a practical inquiry" in which factors such as "administrative and technological barriers" are relevant (*Goldberg v Sweet, supra* at 264-265). The United States Supreme Court has stated, regarding the external consistency aspect of the fair apportionment element, that "[w]e have never required that any particular apportionment formula or method be used, and when a State has chosen one, an objecting taxpayer has the burden to demonstrate by clear and cogent evidence that the income attributed to the State is in fact out of all appropriate proportions to the business transacted * * * in that State,

or has led to a grossly distorted result" (*Oklahoma Tax Commn. v Jefferson Lines, Inc., supra* at 195 [internal quotation marks omitted]).

The Department's economic justification in taxing petitioner's income begins with the fact that the entire source of his disputed income is a law school located in New York (*cf. Oklahoma Tax Commn. v Chickasaw Nation*, 515 US 450, 463 n 11 ["as to nonresidents, 'the tax is only on such income as is derived from * * * sources (within the State)' "]). It is the existence of that law school—which receives the benefits and protections from New York every day of the year—that affords petitioner an employment opportunity and a salary. The work petitioner states he conducted in Connecticut was integrally intertwined with the law school. Even his scholarly writings attach prominence to his position as a professor of law at Cardozo Law School. When a New York employer who is the source of the income requires an employee to be in another state, New York permits a nonresident employee to apportion income. In that situation, the benefits and protections of the other state are necessarily implicated. However, where, as here, the decision to be in another jurisdiction is discretionary and the source of the income is entirely in New York, we are not convinced that New York's taxing scheme violates the Commerce Clause.

*Central Greyhound Lines of N.Y. v Mealey* (334 US 653), relied upon by petitioners, is distinguishable. Initially, we note that the value being taxed herein is not subject to easy apportionment as in *Central Greyhound*. In that case the value being taxed included highways which could be easily apportioned based upon miles traveled by a vehicle in the taxing state (*see generally Goldberg v Sweet*, 488 US 252, 264, *supra*). Here, New York provides a host of tangible and intangible protections, benefits and value to the source of petitioner's income—a law school located entirely in New York—and such attributes are not susceptible to easy apportionment. Moreover, the facts in *Central Greyhound* did not implicate the potential for abuse and accompanying administrative difficulties that could flow from the position urged by petitioners (*see Matter of Phillips v New York State Dept. of Taxation & Fin.*, 267 AD2d 927, 928, *lv denied* 94 NY2d 763; *Matter of Kitman v State Tax Commn.*, 92 AD2d 1018, 1019, *supra*). Accordingly, we find that petitioners have failed to demonstrate by clear and cogent evidence that the income attributed to New York is in fact out of all appropriate proportion to the business that petitioner transacted in New York (*see Oklahoma Tax Commn. v Jefferson Lines, Inc.*, 514 US 175, 195, *supra*).

Petitioners' due process argument is equally unavailing. Under the Due Process Clause, a state may not arbitrarily tax value earned outside its borders (*see Allied-Signal, Inc. v Director, Div. of Taxation*, 504 US 768, 777). To ensure that a tax satisfies due process, " ' "[t]he simple but controlling question is whether the state has given anything for which it can ask return" ' " (*Commonwealth Edison Co. v Montana*, 453 US 609, 625, quoting *Wisconsin v J.C. Penney Co.*, 311 US 435, 444). The tax imposed must "bear[ ] fiscal relation to protection, opportunities and benefits given by the state" (*Wisconsin v J.C. Penney Co., supra* at 444). An ample foundation to justify the tax under a due process analysis is provided by the host of tangible and intangible benefits flowing directly and indirectly to petitioner from New York, the location of the law school that supplies his total relevant income.

Finally, the Court is cognizant that New York's convenience of the employer test, which is utilized by only a few other states, has been the focus of criticism (*see e.g.* Lee, Lipari and Newman, *Odd Tax Laws Spell Trouble for Telecommuters and Employers*, 10 Journal of Multistate Taxation and Incentives 37 [July 2000]). In our view, however, since we find no constitutional infirmity with the challenged tax scheme, the perceived problems must be addressed by Congress or the Legislature, not the courts.

MERCURE, J.P., CREW III, SPAIN and ROSE, JJ., concur.

Adjudged that the determination is confirmed, without costs, and petition dismissed.