**DIRECTOR OF REVENUE, Appellee Below, Appellant,**

v.

**CNA HOLDINGS, INC., F/K/A HOECHST CELANESE CORPORATION, Appellant Below, Appellee.**

No. 51,2002.

Supreme Court of Delaware.

Submitted: Dec. 3, 2002.

Decided: March 21, 2003.

---

5. *Johnson v. State,* 587 A.2d 444, 448 (Del. 1991).

6. Trial Record at 72.

7. *Id.*

Joseph Patrick Hurley, Jr., Esquire, of the Department of Justice, Wilmington, Delaware, for Appellant.

Stanford L. Stevenson, III, Esquire, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, and Paul H. Frankel, Esquire, and Michael A. Pearl, Esquire, of Morrison & Foerster, LLP, New York, New York, for Appellee.

Before VEASEY, Chief Justice, WALSH, HOLLAND, BERGER and STEELE, Justices, constituting the Court en Banc.

BERGER, Justice:

In this appeal, we consider the meaning of a tax statute that allocates and apportions to Delaware part of the entire taxable income of corporations that generate revenue in several states. The relevant provision includes, as taxable income in Delaware, 100% of the gains (or losses) on the sale of real property located in this State. This statute caused the appellee taxpayer to pay tax on 187% of its gain on the sale of a Delaware property, since other states also taxed the transaction. The Delaware Tax Appeal Board rejected the taxpayer's claim for a refund, but the Superior Court reversed, holding that a literal reading of the statute leads to an unreasonable result—almost double taxation. We hold that the statute clearly and unambiguously requires that the entire gain be included in the taxpayer's Delaware taxable income. The Delaware tax is not unreasonable because, although Delaware taxes 100% of the gain from the sale of Delaware property, it does not tax any portion of the gain from the sale of out-of-state property. Thus, to the extent that Delaware may be deemed to be taking more than its share of the tax on a Delaware property sale, it is taking less than its share of the tax on out-of-state transactions.

Factual and Procedural Background

CNA Holdings, Inc., formerly known as Hoechst Celanese Corporation, operates a multi-state manufacturing operation and, during the time period in question, it filed state income tax returns in 34 jurisdictions, including Delaware. In 1989, CNA sold its PVC Film Division Plant, which was located in New Castle, Delaware, for approximately $26 million. For federal income tax purposes, CNA recognized a gain in the amount of $14,004,480 from the sale of the PVC plant. That gain included $9,903,729 in depreciation recapture. The remainder, $4,100,751, was what CNA calls "economic gain."

CNA's federal adjusted gross income for 1989 was $120,384,436. It originally paid $1,224,075 in Delaware income tax. Of that amount, $1,218,390 represented the tax on the PVC plant sale. CNA also paid a total of $649,030 in other state taxes on the gain from the PVC plant sale. In 1992, CNA filed an amended Delaware tax return seeking a refund of $817,166. The amendment removed the $9.9 million in depreciation recapture on the PVC plant sale from non-apportionable income within Delaware, and added it to apportionable income. The amendment also moved $35.3 million in depreciation recapture from other, out-of-state, transactions from non-apportionable to apportionable income.

The Delaware Director of Revenue denied CNA's claim for a refund and, after conducting a hearing, the Delaware Tax Appeal Board also ruled against CNA. The Superior Court reversed, based on its conclusion that "a literal reading of the statute [30 Del. C. § 1903(b)(3) ] would lead to an unreasonable... result." To avoid an unreasonable result, the trial court interpreted the word "gains" to mean only "economic gains" and not depreciation recapture. This appeal followed.

## Discussion

■ There are two federal constitutional limitations on a state's power to tax income from a multi-state business:

First, no tax may be imposed, unless there is some minimal connection between [the business] activities and the taxing State.... Second, the income attributed to the State for tax purposes must be rationally related to "values connected with the taxing State."[1]

Because it is difficult to determine precisely how much of a corporation's income is generated in each state, the method of apportioning income in this, or any other, state, "will only be disturbed when the taxpayer has proved by 'clear and cogent evidence' that the income attributed to the State is in fact 'out of all appropriate proportion to the business transacted ... in that State' ...or has 'led to a grossly distorted result....'"[2]

Delaware's allocation and apportionment statute, 30 *Del. C.* § 1903(b), differs from the apportionment statutes of almost all other states. In Delaware, first income is allocated to the state in which the asset is located. Thus, for example, patent royalties are allocated to the states in which the patented process or product is manufactured or used, and gains (or losses) from the sale of real property and depreciable tangible personal property are allocated to the state in which the property is located.[3] The remainder of the corporation's net income is apportioned to Delaware based on Delaware's percentage of the company's total asset values, wages, and gross receipts.[4] The parties agree that most other states apportion all business income based on a formula like the one used in Delaware, and only allocate non-business income according to geographic rules.

■ The inevitable result of Delaware's tax scheme is that, when Delaware real property is sold, the corporation suffers double taxation on that transaction. Delaware taxes 100% of the gain, and almost all other states tax their allocated share of the same gain. In this case, the result was that 187% of the gain was taxed and CNA paid, to all states in which it pays taxes, a total of $1,867,420 on its $14,004,480 gain, or approximately 13% in state taxes. But the issue is not whether a particular item is arguably overtaxed; the issue is whether the Delaware statute unambiguously provides for 100% taxation on the gain from the sale of Delaware real estate. If so, we must decide whether application of the Delaware statute leads to a grossly distorted result, out of all proportion to the business CNA transacted in Delaware.

The Superior Court only reached the first issue, finding that a literal reading of the statute leads to an unreasonable result. The problem with the trial court's analysis is that it failed to consider the entire statutory allocation scheme. Section 1903(b) provides, in relevant part:

(b) "Taxable income" subject to taxation under this chapter means the portion of the entire net income of a corporation which is allocated and apportioned to this State in accordance with the following provisions:

(1) Rents and royalties ... from tangible property shall be allocated to the state in which the property is physically located;

---

1. *Moorman Manufacturing Co. v. Bair,* 437 U.S. 267, 273, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978) (Citations omitted).

2. *Id.* at 274, 98 S.Ct. 2340 (Citations omitted).

3. 30 *Del.C.* § 1903(b)(2),(3), & (4).

4. 30 *Del.C.* § 1903(b)(6).

(2) Patent and copyright royalties ... shall be allocated proportionately to the states in which the product or process protected by the patent is manufactured or used or in which the publication protected by the copyright is produced or printed;

(3) Gains and losses from the sale or other disposition of real property shall be allocated to the state in which the property... is physically located;

(4) Gains and losses from the sale or other disposition of tangible property for which an allowance for depreciation is permitted for federal income tax purposes... shall be allocated to the state where the property is physically located or is normally used in the taxpayer's business;

(5) Interest ... to the extent included in determining entire net income ... shall be allocated to the state where the transaction took place which resulted in the creation of the obligation with respect to which the interest was earned;

(6) If the entire business of the corporation is transacted or conducted within this State, the remainder of its entire net income shall be allocated to this State. If the business... is transacted... in part without this State, such remainder ... shall be apportioned to this State on the basis of the ratio obtained by taking the arithmetical average of these 3 ratios:

a. The average of the value ... of all the real and tangible personal property, owned or rented, in this State ... expressed as a percentage of the average of the value ... of all such property of the taxpayer...;

b. Wages, salaries and other compensation paid ... to employees within this State ... expressed as a percentage of all such wages, salaries and other compensation...;

c. Gross receipts from sales of tangible personal property physically delivered within this State ... and gross income from other sources within this State ... expressed as a percentage of all such gross receipts... and gross income....

CNA's amended return relates only to taxes paid under subsections (3) and (4), resulting from the sale of its Delaware PVC plant and equipment. CNA argues, and the trial court agreed, that the word "gains" in both subsections should be interpreted to mean gains other than amounts attributable to depreciation recapture.

 The goal of statutory construction is to "ascertain and give effect to the intent of the legislature."[5] "If a statute is unambiguous, there is no need for judicial interpretation, and the plain meaning of the statutory language controls."[6] Generally, a statute is considered ambiguous if it is reasonably susceptible of two interpretations. "Ambiguity may also be found if a literal reading of the statute would lead to an unreasonable or absurd result not contemplated by the legislature."[7]

The word "gains," as used in § 1903, is not subject to two reasonable interpretations. Delaware's corporation income tax is based on the corporation's federal taxable income. Section 1903 includes nu-

5. *Ingram v. Thorpe,* 747 A.2d 545, 547 (Del. 2000).

6. *Eliason v. Englehart,* 733 A.2d 944, 946 (Del.1999).

7. *Newtowne Village Service Corp. v. Newtowne Road Development Company, Inc.,* 772 A.2d 172, 175 (Del.2001).

merous references to the Internal Revenue Code in identifying those items from the taxpayer's federal taxable income that must be included in "entire net income" for Delaware state tax purposes. The word "gains" is not defined in § 1903. Since the Delaware corporation tax "piggybacks" on the federal corporation tax, however, it follows that the definition of "gains" for Delaware tax purposes is the same as the definition of "gains" for federal tax purposes. The parties agree that, for federal tax purposes, "gains" includes both "economic gain" and depreciation recapture.

■ Even though the language of the statute is plain and unambiguous, we must decide whether a literal reading of § 1903 leads to unreasonable results. As noted, the trial court considered only the 187% taxation of the PVC gain and found that to be unreasonable. But the statute does not operate in parts. Section 1903 allocates and apportions *all* of a corporation's federal taxable income. Thus, to decide whether § 1903 imposes an unreasonable tax burden on CNA, we must consider the percentage of its income that is taxed in Delaware as compared with the percentage of CNA's income that is generated in or attributable to Delaware.

This record establishes that, in 1989, Delaware taxed 11.6% of CNA's federal taxable income. If CNA's amended return were accepted, Delaware would be taxing 3.88% of CNA's federal taxable income. CNA did not present evidence as to the amount of income actually attributable to Delaware. Rather, CNA pointed out that, under the § 1903(b)(6) apportionment formula, Delaware taxed 1.12% of its apportionable income in 1989. CNA also relied on its experts' opinions that the apportionment formula correctly approximates the amount of income attributable to Delaware

and that Delaware's allocation provisions create unreasonable results.

CNA's evidence establishes that Delaware's tax structure clashes with that of most other states and that, on this transaction, CNA was required to pay tax on 187% of its gain. Those facts, however, do not establish that, by giving the word "gains" in § 1903 its plain meaning, the statute as a whole yields unreasonable results. In fact, depending on how one reviews the numbers, CNA is paying less than its fair share of state taxes. Over the years that it owned the PVC plant, CNA took a total of $31,582,830 in depreciation on the plant. In Delaware, that deduction amounted to $118,664 in tax savings and, when added to the savings in all other states, CNA's total tax benefit was $1,964,460. The total tax that CNA paid on the recapture of that depreciation (including full payment of the Delaware tax) was $1,510,654. Thus, CNA actually wound up with a net benefit of $453,806.

Moreover, the Delaware tax structure allocates 100% of the gains on out-of-state transactions to the state in which the property was located. In 1989, alone, CNA recognized $77.9 million in taxable income that was allocated to states other than Delaware, which included $63.5 million in gains on the sale of depreciable property outside Delaware. None of those amounts were included in the original tax calculation for 1989 and there is no reason to believe that similar gains in other years were included in Delaware taxable income.

In sum, we cannot conclude from this record that § 1903 allocates a disproportionate share of CNA's total income to Delaware. To the contrary, it appears that the overall impact of the Delaware corporation tax structure is beneficial to the multi-state taxpayer. As the Director

of Revenue testified, in 1989 Delaware taxed approximately $25 million in gains on the sale of Delaware property and failed to tax approximately $5.7 billion in gains on the sale of out-of-state property. Given that disparity, the Director was of the view that Delaware taxes less than it could permissibly tax under an apportionment tax structure.

Our conclusion that § 1903 does not cause unreasonable results also resolves the two issues that the Superior Court did not reach. First, CNA has not met its burden of proof in challenging the constitutionality of the statute, as there has been no showing that CNA's Delaware tax is out of all proportion to its business activities in Delaware. For the same reason, we find no abuse of discretion in the Director of Revenue's refusal to adjust CNA's taxable income to correct any unfairness.[8]

### Conclusion

Based on the foregoing, the decision of the Superior Court is reversed and the decision of the Tax Appeal Board is reinstated. This matter is remanded to the Superior Court for further action in accordance with this opinion. Jurisdiction is not retained.