**STAPLES, INC.,**
Plaintiff/Counterclaim–Defendant,

v.

**Thomas COOK,** in his capacity as the Secretary of Finance for the State of Delaware; Patrick T. Carter, in his capacity as the Director of Revenue for the State of Delaware; Mark Udinski, in his capacity as the Director/State Escheator of the State of Delaware; and the Department of Finance, Division of Revenue for the State of Delaware, Defendants/Counterclaim–Plaintiffs.

C.A. No. 5447–CS.

Court of Chancery of Delaware.

Submitted: Dec. 19, 2011.

Decided: Feb. 2, 2012.

Brian M. Rostocki, Esquire, Reed Smith LLP, Wilmington, Delaware; Diane Green–Kelly, Esquire, Reed Smith LLP, Chicago, Illinois, Attorneys for Plaintiff/Counterclaim–Defendant.

Stuart M. Grant, Esquire, Michael J. Barry, Esquire, Ned C. Weinberger, Esquire, Grant & Eisenhofer P.A., Wilmington, Delaware; John S. McDaniel, III, Esquire, Delaware Department of Justice, Wilmington, Delaware, Attorneys for Defendants/Counterclaim–Plaintiffs.

OPINION

STRINE, Chancellor.

### I. *Introduction*

The plaintiff, Staples, Inc., sued the State of Delaware to challenge a demand for payment made by the State under Delaware's escheat law, 12 *Del. C.* §§ 1101, *et seq.* (the "Escheat Statute"). The State countersued, seeking a declaration that the sums demanded from Staples were proper

and authorized under the Statute.[1] Both parties moved for partial judgment on the pleadings.

My decision on these cross-motions depends on the answer to the following question: do unclaimed rebates issued by Staples as "rebate checks"[2] to business customers that purchased a minimum volume of inventory take the form of any of the "specifically enumerated" items set forth in the definition of "property" under § 1198(11) of the Escheat Statute?[3] If they do, they are properly subject to escheatment as "abandoned property" under the terms of the Statute after a "dormancy" period of five years has run against them.[4] If they do not, they are not escheatable because, when a type of property is not "specifically enumerated" in § 1198(11) of the Escheat Statute and a statute of limitations applicable to the owner's right to recover such property elapses before five years, the holder of the property does not become liable to the State.[5]

I find that the rebates at issue here fit comfortably within two of the "specifically enumerated" items of property listed in § 1198(11)—"bills of exchange" and "credits"[6]—and I therefore grant the State's motion for partial judgment on the pleadings and deny Staples's cross-motion. Although the pleadings did not paint a clear picture of the form in which the rebates were issued by Staples to its customers, Staples's counsel conceded at oral argument that the rebates were issued as either negotiable "checks" (*i.e.*, bills of exchange) or "credits."[7] As such, the rebates consist of specifically enumerated items of property under § 1198(11), and the State's claims cannot be barred by any statute of limitations.

## II. *Factual Background*

These are the undisputed facts as they emerge from the pleadings.[8]

In October 2005, the State began an audit under 12 *Del. C.* § 1155 of unclaimed and abandoned property held by Staples. As part of that audit, the State sought records from Staples relating to several different categories of property. The State completed its audit of two of those property types—accounts payable and payroll—in early 2010. On March 31,

---

1. The defendants/counterclaim-plaintiffs in this action are Thomas Cook, in his capacity as the Secretary of Finance for the State of Delaware, Patrick T. Carter, in his capacity as the Director of Revenue for the State of Delaware, Mark Udinski, in his capacity as the Director/State Escheator for the State of Delaware, and the Department of Finance, Division of Revenue for the State of Delaware.

2. Compl. ¶ 90.

3. *See* 12 *Del. C.* § 1198(11).

4. *Id.* §§ 1198(1), 1198(9)a.

5. *Id.* § 1198(11).

6. *Id.*

7. *Staples, Inc. v. Cook*, C.A. No. 5447, at 107 (Del. Ch. Dec. 19, 2011) (TRANSCRIPT).

8. Ct. Ch. R. 12(c). This court will grant a motion for judgment on the pleadings under Court of Chancery Rule 12(c) when there are no material issues of fact and the moving party is entitled to judgment as a matter of law. *McMillan v. Intercargo Corp.*, 768 A.2d 492, 499 (Del.Ch.2000). When considering a Rule 12(c) motion, the court is required to accept the non-moving party's well-pled facts as true and to view the inferences to be drawn from such facts in the light most favorable to the non-moving party. *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del.1993). The court need not, however, "blindly accept" all allegations as true, nor must it draw unreasonable inferences in the non-moving party's favor. *West Coast Mgmt. & Capital, LLC v. Carrier Access Corp.*, 914 A.2d 636, 641 (Del. Ch.2006) (citation omitted).

2010, the State sent Staples a letter demanding payment of sums purportedly representing Staples's abandoned and unclaimed accounts payable and payroll liability for the years 1995 to 2003.

Some of the accounts payable property included in the State's calculation of Staples's liability consists of unclaimed rebates that were issued in connection with the sale of inventory to Staples's business customers. Many business customers entered into supply contracts with Staples whereby Staples agreed to give the customer a reduction in price, or a "rebate," if it purchased a minimum volume of inventory from Staples during a one-year period.[9] The State claims that these rebates, once they have remained unclaimed for the statutorily-prescribed time period, are subject to escheatment.

Staples disagrees. Instead of paying the State, Staples filed its complaint in this action on April 30, 2010, seeking, among other things, a declaratory judgment that "rebates, refunds and other items related to the sale of goods are not unclaimed property" under the Escheat Statute.[10] Central to Staples's position was its contention that the statute of limitations as to the rebates had run against the rightful owners, and that the Escheat Statute does not allow the State to escheat property as to which a claim by the rightful owner is time-barred.

9. Compl. ¶ 89.

10. *Id.* ¶ 112; *see also id.* at 34 (Prayer for Relief).

11. *A.W. Fin. Servs., S.A. v. Empire Res., Inc.,* 981 A.2d 1114, 1124 (Del.2009).

12. 12 *Del. C.* § 1198(1).

13. *Id.* § 1198(9)a. An "owner" of abandoned property is defined as "any person holding or possessing property by virtue of title or own-

## III. *Analysis*

### A. *The Relevant Provisions Of The Escheat Statute And The Parties' Contentions*

The Escheat Statute governs the "reversion of both real and personal property" to the State of Delaware.[11] Under § 1155 of the Escheat Statute, the State has the power to audit and claim "abandoned property," which is defined in § 1198(1) of the Statute as "property against which [the] full period of dormancy has run."[12] The "period of dormancy" is defined, in relevant part, as "the full and continuous period of 5 years ... during which an owner has ceased, failed or neglected to exercise dominion or control over property or to assert a right of ownership or possession or to make presentment and demand for payment and satisfaction or to do any other act in relation to or concerning such property...."[13] The parties do not dispute that the requisite period of dormancy has run against the rebates at issue.

Candidly, the reasoning behind Staples's argument that the unclaimed rebates are not escheatable unclaimed property was not clearly spelled out in Staples's complaint, and the parties filed confusing and meandering briefs in support of their cross-motions. These briefs raised a host of issues that turned out to be tangential to the core question that the State and Staples now agree determines whether the rebates are escheatable. As it turns out, both the State and Staples are in accord

ership." *Id.* § 1198(7). A "holder" of abandoned property, by contrast, is any person having "possession, custody or control of the property of another person" and includes every legal entity "incorporated or created under the laws of [Delaware] or doing business in [Delaware]." *Id.* Here, Staples is the "holder" of the unclaimed rebates that the State seeks to escheat.

that the issue of whether the statute of limitations ran for claims belonging to the business customers given rebates is relevant only if the rebates do not fit within certain specifically enumerated categories set forth in the definition of "property" under the Escheat Statute.

■ This reality is made clear by § 1198(11) of the Escheat Statute, which states as follows:

'Property' means ... personal property ... of every kind or description, tangible or intangible, ... [including], *but not by way of limitation,* (i) money; (ii) *bills of exchange;* ... (iv) *credits* ...; and (xiii) all other liquidated choses in action of whatsoever kind or character.... The word 'property' does not include ... any property, except the items *specifically enumerated* above in paragraph (11) of this section ..., *the right to recover which in a proceeding brought by the owner would be barred by any statute of limitations* .... [14]

In other words, if a type of property does not fall within any of the "specifically enu-

merated" categories set forth in § 1198(11) of the Escheat Statute, and the statute of limitations applicable to the owner's claim to that property is less than the five-year dormancy period, the property will not count as "property" for escheatment purposes and the holder of such property will not be required to deliver it to the State. But, the opposite is also true, rendering the running of the statute of limitations against the owner irrelevant when the property at issue is one of the specifically enumerated types set forth in § 1198(11).[15]

As a result, Staples's arguments regarding the expiration of the statute of limitations as to the rebates need not be answered if, as I next find, the rebates took the form of property specifically enumerated in § 1198(11) of the Escheat Statute.[16]

## B. The Rebates Are "Bills of Exchange" Or "Credits" Under the Escheat Statute And Are Therefore Escheatable

"If a statute is unambiguous, there is no need for judicial interpretation, and the plain meaning of the statutory language

---

**14.** *Id.* § 1198(11) (emphasis added).

**15.** The parties' circuitous journey is in part explained by the Escheat Statute itself. The State stressed that the general rule is that the running of the statute of limitations against the owner of property has no effect on the State's right to escheat. The State correctly bases this argument on § 1202 of the Statute, which says:

The expiration of any period of time specified by statute or court order, during which an action or proceeding may be commenced or enforced to obtain payment of a claim for money or recovery of property, shall not prevent the money or property from being deemed abandoned property nor affect any duty to file a report required by this subchapter or to pay or deliver abandoned property to the State Escheator. *Id.* § 1202. But Staples was also correct to point out that § 1202 is far from a comprehensive statement, because § 1198(11) nar-

rows it greatly by rendering the running of the statute of limitations against the owner a defense against escheat as to categories of property not specifically enumerated in that subsection. It took time for the State and Staples to parse the interaction of these two provisions of the Escheat Statute and then to land on the central question at issue on these cross-motions.

**16.** Staples argues that the rebates were subject to a statute of limitations shorter than the five-year dormancy period under the Escheat Statute. Specifically, Staples contends that any claims by owners of the unclaimed rebates are limited by § 2–725 of the Delaware Uniform Commercial Code (the "UCC"), which provides that "[a]n action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued," 6 *Del. C.* § 2–725, because the rebates at issue were given to business customers under supply contracts. I need not and thus do not determine whether this is so.

controls."[17] Thus, I take into account the "plain meaning" of the items listed in § 1198(11) of the Escheat Statute. I find that the rebates at issue here are either "bills of exchange" or "credits," and are therefore properly subject to escheatment by the State.[18]

Although the briefing distilled the legal dispute between the parties into the single question of whether the rebates were specifically enumerated property items within the meaning of § 1198(11), the briefs left me with somewhat of a factual dilemma. Despite being the master of its own complaint, Staples was less than clear in that complaint about the form in which it gave its customers rebates. In one paragraph of its complaint, Staples referred to the rebates as "rebate checks" that its customers had not "cash[ed]."[19] But, it remained unclear on the pleadings whether all of the rebates included in Staples's alleged unclaimed and abandoned property liability took the form of checks, and whether they were in fact negotiable checks, which would mean they were bills of exchange, or simply something that gave the customers a right to go to Staples and get cash.[20] In order to issue the ruling on undisputed facts that both parties sought, the court desired to get clarity at oral argument so that it understood that the parties were both talking about the same thing.

■ When questioned about the form of the rebates, Staples's counsel conceded that the rebates were issued as either checks or credits. The following exchange took place:

> Q. The way this works is you send them—in my hypothetical, Chancery [meets the minimum volume requirement for a rebate], gets [a] $1,000 rebate eligibility. [Staples] send[s] me a check that I can then take to a bank and get $1,000 from.
>
> A. Yes. Usually what happens is the salesperson takes a check ... and if they've met their requirement, they'll hand it to them.
>
> Q. It's a check.
>
> A. But it's a check. It can be a check or it can be an offset to amounts owed....
>
> Q. An offset to amounts owed, that's a credit.
>
> A. [State's counsel] It's called a credit.
>
> A. [Staples's counsel] *It can sometimes be a credit, it can sometimes be a check. It's a rebate* ....[21]

To the extent that the rebates could be satisfied by Staples's giving one of its business customers an "offset to amounts owed," such rebates would, as Staples's

---

17. *Dir. of Revenue v. CNA Holdings, Inc.,* 818 A.2d 953, 957 (Del.2003) (citing *Eliason v. Englehart,* 733 A.2d 944, 946 (Del.1999)).

18. Because I find that the rebates are either bills of exchange or credits, I do not reach the State's arguments that the rebates constitute "money" and/or "liquidated choses in action," which are also items specifically enumerated in § 1198(11).

19. Compl. ¶ 90 ("Business customers that do not cash their *rebate checks* can no longer make a claim against Staples for such rebates after the 4–year statute of limitations in the UCC passes.") (emphasis added).

20. A "check" is defined in § 3–104(f) of the UCC as "a draft ... payable on demand and drawn on a bank." 6 *Del. C.* § 3–104(f). The comments to Article 3 of the UCC clarify that "[t]he term 'bill of exchange' is not used in Article 3. It is generally understood to be a synonym for the term 'draft.'" 6 *Del. C.* § 3–104 cmt. n. 4. The comments go on to state that the term "draft" includes a "check" as defined in § 3–104(f). *Id.*

21. *Staples, Inc. v. Cook,* C.A. No. 5447, at 107 (Del. Ch. Dec. 19, 2011) (TRANSCRIPT) (emphasis added).

counsel admitted, constitute "credits,"[22] and would obviously fall within the specifically enumerated item of "credits" under § 1198(11) of the Escheat Statute.[23]

Staples's counsel also conceded at oral argument that to the extent that the rebates were issued as checks, they were negotiable checks that the business customer could cash at the bank or sign over to a transferee, i.e., "bills of exchange," another item specifically enumerated in § 1198(11).[24] This concession is shown by the exchange quoted below:

> Q. I just want to know that I can—for the purposes of the motion, you concede that when the customer hits the level of discount, Staples . . . hand-delivers a rebate in the form of a check, which is as good as any check you would get from anyone with a credit rating as good as Staples in terms of your ability to sign it over to anyone, take it to a bank, and the only risk that you have is that Staples goes insolvent before the check is negotiated?
>
> A. You can either get a check or you can get an offset against your outstanding invoices. . . . You can get a credit.[25]

Staples tried to insist at oral argument that a "rebate" is not itself a check or a credit just because it might be paid with a check or issued as a credit, and that instead the court must look to the "underlying property"—the rebate.[26] But, Staples's argument does not address the statutory question at hand, which is about the what, not the why. The relevant inquiry is what the property is and whether it fits within one of the categories specifically enumerated in § 1198(11) of the Escheat Statute. The reason why the property was given is irrelevant. In this case, Staples gave its customers a check as a rebate. In other situations, Staples doubtless issues checks for other reasons, such as to pay for services, to effect a refund, or in the myriad other circumstances that lead to payments to customers, vendors, or other parties. Nothing in the words of the Escheat Statute remotely suggests that the reason why a kind of property specifically enumerated was created or given to another party bears on whether that property is specifically enumerated. If the General Assembly had intended to carve out from escheat categories of otherwise specifically enumerated property because of the reasons for their creation, the General Assembly would have done so with words, and not have left it to the judiciary to, in the first instance, invent for itself the authority to carve out certain categories on the basis of the why, and then to determine what reasons why justified exclusion from escheat.

The undisputed reality of record here is that Staples provided to its business customers two forms of property as part of its relationship with those customers. One was a "rebate in the form of a check" that was negotiable at a bank.[27] A check is a quintessential example of a bill of exchange and thus a specifically enumerated item under the Escheat Statute. The other form of property given was an "offset[ ]" against the customer's "outstanding

---

22. Id.

23. See 12 Del. C. § 1198(11). Black's Law Dictionary defines a "credit" as "[a] deduction from an amount due." Black's Law Dictionary (9th ed.2009).

24. See 12 Del. C. § 1198(11).

25. Staples, Inc. v. Cook, C.A. No. 5447, at 111–12.

26. Id. at 109–10.

27. Id. at 112.

invoices." [28]  That is, these customers were given "credits." [29]  Thus, as clarified by Staples's own illumination of the rebates addressed in its complaint, the rebates all involve property specifically enumerated within § 1198(11).[30]

### IV.  *Conclusion*

For the foregoing reasons, the State's motion for judgment on the pleadings to dismiss Staples's claim in Count I of its complaint for a declaratory judgment that the rebates are not escheatable is GRANTED, and Staples's cross-motion on that Count is DENIED.  Count I of Staples's complaint is therefore dismissed. IT IS SO ORDERED.

**28.**  *Id.*

**29.**  *Id.*

**30.**  It may be that all of the rebates picked up in the State's audit were in the form of checks, *see id.* at 113, but the key point for now is that Staples admits that they were either in the form of a check or a credit, both of which are items specifically enumerated in § 1198(11).