## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

DENNIS L. SCHAFER AND     :
GEORGEANNA F. SCHAFER,     :
husband and wife, and DAVID     :    C.A. No. K22C-11-014 JJC
W. CAHALL and MARSHA L.     :
CAHALL, husband and wife,     :
    :
    Petitioners,     :
    :
    v.     :
    :
KENT COUNTY DEPARTMENT     :
OF PLANNING SERVICES, an     :
agency of Kent County, a political     :
subdivision of the State of Delaware,   :
and CHING, LLC a Delaware     :
limited liability company,     :
    :
    Respondents.     :

Submitted: February 10, 2023
Decided:   May 31, 2023

### MEMORDANDUM  OPINION

John W. Paradee, Esquire, Brian V. DeMott, Esquire, and J. Garrett Miller, Esquire, BAIRD, MANDALAS, BROCKSTEDT, FEDERICO & CARDEA, LLC., Dover, Delaware, *Attorneys for Petitioners.*

Daniel A. Griffith, Esquire, WHITEFORD, TAYLOR & PRESTON, LLC., Wilmington, Delaware, *Attorney for Respondent The Kent County Department of Planning Services.*

Richard A. Forsten, Esquire, Pamela J. Scott, Esquire, and Gary W. Lipkin, Esquire, SAUL, EWING, ARNSTEIN & LEHR, LLP., Wilmington, Delaware, *Attorneys for Respondent Ching, LLC.*

**Clark, R. J.**

This decision examines a landowner's challenge to a Kent County Department of Planning Services ("DPS" or alternatively "DPS staff") decision to approve a subdivision application. Petitioners Dennis Schafer, Georgeanna Schafer, David Cahall, and Marsha Cahall (hereinafter collectively referred to as "the Schafers") attempt to appeal DPS's approval of Respondent Ching, LLC's minor subdivision plan (the "Plan"). In their petition, the Schafers ask the Court to expunge the Plan from Kent County's property records because DPS unlawfully approved it. Ching counters by filing a motion to dismiss the petition because the Schafers have no right to appeal the decision.

For the reasons discussed below, the Superior Court has no jurisdiction to consider the Schafers' appeal because no statute authorizes it. Under the circumstances of this case, however, the Court grants their alternative motion to amend the petition to request a writ of *certiorari.* As explained below, the motion to amend is timely and the Court has common law jurisdiction to review the lawfulness of DPS's approval.

## I.    PROCEDURAL AND FACTUAL BACKGROUND

The facts recited below are those alleged in the Schafers' verified petition and are assumed to be true at this stage of the proceedings. The Schafers and the Cahalls own separate one-acre parcels close to one another in Kent County. Those parcels, in turn, are close to a twenty-acre parcel owned by Ching. The Schafer, Cahall, and Ching parcels all abut the same existing roadway.

In November 2021, Ching requested that DPS approve its minor subdivision plan. The Plan sought, *inter alia,* to subdivide the twenty-acre parcel into two parcels and to authorize at least one new roadway within the twenty-acres. DPS staff approved the Plan as submitted in March 2022 without providing community notice or a hearing.

2

State and County Code provisions provide for a formal approval process for a "standard" subdivision plan. The initial review of a standard subdivision plan is conducted by Kent County's Regional Planning Commission ("the RPC").[1] Public notice, a public hearing, and a decision by the RPC are all prerequisites for approval.[2] After the RPC approves or denies it, an aggrieved party may then appeal the RPC's decision to Kent County's Levy Court.[3]

Because Ching proposed a minor subdivision, however, neither Kent County's Regional Planning Commission nor the Kent County Levy Court reviewed DPS's decision. Moreover, DPS provided no public notice and received no public comment. As a result, seven months passed before the Schafers inadvertently discovered that DPS had approved the Plan.

When the Schafers learned of the approval, they filed a "verified petition for expungement." The petition presents as a combination of an appeal and a declaratory judgment action.[4] In it, the Schafers rely primarily on a provision that permits Kent County land use appeals, 9 *Del. C.* §4818 (hereinafter "Section 4818"), as the basis for their requested relief.

At this stage of the proceedings, Ching moves to dismiss the petition pursuant to Superior Court Civil Rule 12(b)(6). In Ching's motion, it contends that no statute provides the Schafers the right to appeal DPS's decision to approve a minor

---

[1] 9 *Del. C.* § 4818; Kent Cty. C. § 187-85(B).
[2] 9 *Del. C.* § 4810.
[3] 9 *Del. C.* § 4811.
[4] *See* Mot. for Expungement, ¶¶ A–G (requesting that the Court (1) declare DPS's approval of Ching's application improper and a violation of the Schafers' procedural due process rights; (2) declare the recording process unlawful; (3) prohibit Ching from developing the property; (4) find that DPS must expunge the Plan; and (6) award costs and attorneys' fees). At oral argument, the Schafers abandoned their declaratory judgment claims, and clarified that they intend to pursue only an appeal. Accordingly, the balance of the Court's opinion will address (1) whether there is a cognizable appeal and (2) whether the Court should grant the proposed amendment to seek a writ of *certiorari*.

subdivision plan.[5]  The Schafers disagree and contend that Section 4818 permits their appeal.[6]  In the alternative, the Schafers move to amend their pleading to request review on *certiorari*.[7]  Ching, in turn, requests that the Court deny the motion to amend because it is untimely.[8]

## II.    THE PARTIES' ARGUMENTS

Ching contends that Section 4818 provides no right to appeal DPS's decision to approve a minor subdivision because it permits an aggrieved party to appeal only the decisions of the "county government."  Ching then relies on the definition in 9 *Del. C.* §4801(4) that defines "county government" as "the county governing body of Kent County" for all of Chapter 48.[9]  The governing body of Kent County, Ching emphasizes, can only be Kent County's Levy Court.

The Schafers counter that they have a statutory right to appeal DPS's decision. For that, they advocate a broader reading of the phrase "county government."[10]  In essence, they rely on the common and ordinary meaning of the phrase and contend that Section 4818 provides them a direct appeal of DPS's decision because that agency is part of the county government.

As to substance, the Schafers contend that DPS committed an error of law by approving the Plan contrary to statutory and ordinance-based requirements.[11]  In part, the Schafers contest the lawfulness of the Plan because it creates two new parcels that, in turn, are located on a "new road."[12]  They contend that the inclusion

---

[5] Mot. to Dismiss ¶ 2.
[6] Resp. in Opp'n to Mot. to Dismiss ¶ 1.
[7] Mot. to Amend ¶ 6.
[8] Resp. to Mot. to Amend ¶ 3.
[9] *Id.* ¶ 2.
[10] Pet'r's Supp. Br.'g at 2.
[11] Mot. for Expungement ¶¶ 23–26.
[12] *Id.* ¶ 23.

of a new road disqualified the Ching's parcel from being treated as a minor subdivision as defined in 9 *Del.C.* § 4801(8). The Schafers further rely on the definitions and requirements for a standard subdivision and contend that the Plan fits squarely within those requirements, thereby making DPS's approval of the Plan contrary to law, by implication.[13]

The Schafers alternatively seek to amend their petition to request a writ of *certiorari*. When doing so, they emphasize that the proposed amendment is nearly identical to their initial filing.[14] In response, Ching concedes that the Schafers could have challenged DPS's decision pursuant to a writ of *certiorari* because there is no right to appeal.[15] Nevertheless, Ching contends that the motion to amend is untimely because they did not file it within thirty days of their initial petition. For that argument, Ching relies upon recent decisional authority that imposes a "typical" period for filing an administrative appeal – thirty days – by analogy.[16]

Finally, Ching challenges the Schafers' standing to challenge the Plan and the ripeness of the matter for review by either appeal or *certiorari*. As to standing, Ching contends that DPS's approval does not impact any recognized property right due the Schafers. As to ripeness, Ching relies on the recent Delaware Supreme Court decision, *JMER Properties, LLC v. State of Delaware Department of Transportation.*[17] Ching argues that, according to *JMER Properties*, DPS's approval of a minor subdivision is only an intermediary step toward developing the land, which leaves it unripe for judicial review.[18]

---

[13] Mot. for Expungement ¶¶ 24–27.
[14] Mot. to Amend ¶¶ 10–11.
[15] Resp. to Mot. to Amend ¶ 11.
[16] Resp't's Supp. Br'g at 2.
[17] 291 A.3d 1089, 2023 WL 1097340 (Del. Jan. 30, 2023) (TABLE).
[18] Resp't's Supp. Br'g at 3–4.

### III.    STANDARD OF REVIEW

Ching moves under Superior Court Civil Rule 12(b)(6) to dismiss the Schafers' petition for failure to state a claim.  When the Court considers a motion to dismiss on that basis, it accepts the facts alleged in the original pleading as true.[19] A pleading survives a Rule 12(b)(6) review if it provides adequate notice of the basis for the claim and demonstrate a conceivable basis for success.[20]

Ching further contends that the Court has no jurisdiction to consider the appeal because no statute authorizes it.  In other words, Ching challenges the Court's subject matter jurisdiction to do so, which implicates Superior Court Civil Rule 12(b)(1) rather than Rule 12(b)(6).[21]    In Delaware, the Superior Court has jurisdiction to consider an appeal of an agency's case decision in two circumstances: (1) if there is a provision in the agency's enabling statute that authorizes the appeal; or (2) the agency is an enumerated agency whose case decisions are subject to appeal through Delaware's Administrative Procedures Act ("APA").[22]

At this stage of the proceedings, the Court considers both a motion to dismiss and a motion to amend, which in turn implicates Rules 12(b)(1) and 12(b)(6). Typically, there is a difference in the scope of the record when the Court decides these respective motions.[23]   Rule 12(b)(6) confines the record to the initial pleading and anything integral to the pleading.[24]    A Rule 12(b)(1) challenge, on the other

---

[19] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

[20] *Id.*

[21] *Abbott v. Vavala*, 2022 WL 453609, at *5 (Del. Ch. Feb. 15, 2022), *aff'd*, 284 A.3d 77, 2022 WL 3642947 (Del. Aug. 22, 2022) (TABLE).

[22] 29 *Del. C.* Ch. 101; *Haden v. Bethany Beach Police Dep't*, 2014 WL 2964081, at *4 (Del. Super. June 30, 2014).

[23] *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005) (explaining that the Court's review in a Rule 12(b)(6) motion is limited to the allegations in the initial pleading); *cf. Abbot*, 2022 WL 453609, at *6 (explaining that in a Rule 12(b)(1) motion the Court may expand the record to matters touching on the Court's power to hear the case).

[24] *Duncan v. Garvin*, 2021 WL 2550656, at *2 (Del. Super. June 21, 2021).

hand, may require the Court to consider matters outside the pleadings to evaluate subject matter jurisdiction.[25] In this case, however, the Court relies only on the facts and law cited in the petition and considers no outside material for either challenge. It need not because the question of the Court's jurisdiction over administrative appeals presents a narrow issue: either a statute authorizes it or it does not.

## IV.   DISCUSSION

The Court has no jurisdiction to hear the Schafers' appeal. A writ of *certiorari*, however, is an appropriate mechanism to review DPS's decision for legal error. Furthermore, a straightforward application of Rule 15(c)'s relation back standard makes the Schafers' motion to amend timely. Finally, Ching's challenges to the Schafers' standing and the ripeness of their claims do not make the amendment futile for the reasons explained below. As a result, the Court will fully consider the amended petition's merits after briefing.

### A. The Superior Court may hear an administrative appeal only if the General Assembly provides it jurisdiction to do so.

The Superior Court is Delaware's court of general jurisdiction.[26] Appeals of decisions of administrative agencies, however, do not fall within the Court's common law jurisdiction. Rather, a statute must authorize them. Here, the Court will first address the two relevant subdivision application processes in Kent County to explain how the General Assembly provided no right of appeal in this instance.

First, the Delaware Code provides the following procedure for approving a Kent County *minor subdivision* application:

---

[25] *Abbott*, 2022 WL 453609, at *5.
[26] 10 *Del. C.* § 541; Del. Const. art. IV, § 7; *New Castle Cty. v. Chrysler Corp.*, 681 A.2d 1077, 1080 (Del. Super. 1995).

7

approval for [a] minor subdivision shall be by administrative Commission staff pursuant to minor subdivision regulations which the county government is hereby authorized and directed to adopt.[27]

Because Ching submitted the Plan as a minor subdivision, there was a staff-only review of the application. Commission staff in this subsection refers to DPS. The process used by DPS includes no right to public notice, public hearing, or internal appeal elsewhere within the County's governmental structure.

Second, an applicant for a *standard subdivision* plan must submit the plan to Kent County's Regional Planning Commission for approval.[28] Section 4818 then provides a party aggrieved by an RPC decision the right to appeal to the "county government."[29] Then, after the county government renders its final decision, an aggrieved party may file an administrative appeal to the Superior Court.[30]

In this case, the Schafers base their appeal on Section 4818 which specifies what Kent County land use decisions may be appealed to the Superior Court. In relevant part, it provides the following:

[a]ll decisions of *the county government* pursuant to applications made under this chapter are appealable to the Superior Court of Kent County . . . within 10 days of the written decision of the county government.[31]

The Schafers contend that DPS provided the decision of "the county government" when it approved the Plan so they can now appeal that decision to the Superior Court. In support, they promote the common and ordinary definition of the phrase "county government" and contend that DPS's approval, because it was final, became the government's final decision.

---

[27] 10 *Del. C.* § 4810. *See* Kent Cty. C. §§ 187-29–187-33 (providing the process and procedure for an applicant to submit a plan to seek DPS approval of a minor subdivision plan).
[28] Kent Cty. C. §§ 187-7–187-27.
[29] 9 *Del. C.* § 4811; Kent Cty. C. § 187-85(B).
[30] 9 *Del. C.* § 4818; Kent Cty. C. § 187-85(C).
[31] 9 *Del. C.* § 4818 (emphasis added).

Ching counters by relying on the statutory definition of "county government." That definition, found in Section 4801(4), applies to all of Chapter 48, including Section 4818. It defines "county government" as "*the* county governing body of Kent County."[32] Ching contends that such a reference can only refer to the Levy Court, which means that the Schafers cannot appeal DPS's decision because DPS is not the Levy Court.

On reflection, Ching's proffered statutory construction is the correct one. Namely, the General Assembly can, and often does, limit a statute's application by narrowly defining its scope.[33] It is axiomatic that if the General Assembly provides such legislative direction, a court must apply the statute's plain language.[34] As a result, a statute's plain language controls even when the General Assembly enacts a definition that is narrower than the common and ordinary meaning of a word or phrase.[35]

In this case, the General Assembly is presumed to have understood that it limited appeals to only decisions by the Levy Court by defining county government as *the* governing body of Kent County. It did so primarily by including a defined term in Section 4818 that limits what body's decisions are subject to Superior Court appeal. Furthermore, in addition to Subsection 4801(4)'s definition, the Delaware

---

[32] 9 *Del. C.* § 4801(4) (emphasis added).

[33] *See Tesla Inc. v. Del. Div. of Motor Vehicles*, 2023 WL 3470406, at *5 (Del. May 15, 2023) (recognizing that "[w]hen a statute specifically defines a term, even if it is different than its ordinary meaning, the Court will apply the definition used by the General Assembly.").

[34] The rules of statutory construction are designed to ascertain and give effect to the General Assembly's intent, as expressed in the statute. *Mayor and Council of Wilmington v. Dukes*, 157 A.2d 789, 793 (Del. 1960). First, the Court must determine if a statute is ambiguous. *Dir. of Revenue v. CNA Holdings, Inc.*, 818 A.2d 953, 957 (Del. 2003). If not, "then the plain meaning of the statutory language controls." *Id*. Simply because the parties cannot agree regarding the meaning of the statute does not create ambiguity. *Centaur Partners, IV v. Nat'l Intergroup, Inc.*, 582 A.2d 923, 927 (Del. 1990). Rather, a statute is ambiguous only if it is reasonably susceptible to different interpretations. *Id*.

[35] *Id*.

and County Codes recognize that Levy Court is the governing body of Kent County. The Delaware Code does so by recognizing that "[i]n Kent County, *the* governing body shall consist of 7 elected officials,"[36] which provides an inescapable reference to the Kent County Levy Court's seven members. Furthermore, the Kent County Code recognizes, even more specifically, that the Levy Court is the "governing body of Kent County.[37]

The Schafers also rely on Section 4818's legislative history when arguing the opposite. They stress that the 1970 version of Section 4818 initially referred to "the Levy Court." They then highlight that the General Assembly later amended the statute to its current form by substituting the phrase "the county government" for "the Levy Court."[38] That change, the Schafers argue, demonstrates the General Assembly's intent to expand the scope of appealable decisions *beyond* those of the Levy Court.

Notwithstanding this substituted phrasing, the Court must ascertain the General Assembly's intent by applying the plain meaning of the current version if it contains no ambiguity.[39] Despite the substitution of terms, the Schafers do not explain how the Court can ignore (1) the clear statutory direction in Section 4818 and Subsection 4801(4), and (2) the absence of an alternate provision in Chapter 48 that permits their appeal. In other words, a change in phrasing from a prior version of Section 4818, alone, cannot negate the statute's unambiguous reference to the

---

[36] 9 *Del. C.* § 4103 (emphasis added). The phrase "county government" is used elsewhere throughout Chapter 48. For instance, the right of appeal from the Regional Planning Commission is to "the county government." 9 *Del. C.* §4811. No reasonable reading of the statute would provide for any entity other than the Levy Court to fulfill that role.

[37] *Levy Court*, Kent Cty. C. § 184-5.

[38] *See* 57 Del. Laws ch. 710, § 1 (1970) (providing "[a]ll decision of the *Levy Court* . . .") (emphasis added); *cf.* 9 *Del. C.* § 4818 (1975) (providing "[a]ll decision of the *county government*. . .") (emphasis added).

[39] *See CNA Holdings*, 818 A.2d at 957 (explaining that a court need not interpret an unambiguous statute because its plain meaning controls).

only entity from which an aggrieved party may take an appeal.  Since the DPS's decision is not one of "the governing body" of Kent County, the Schafers have no appeal right.

Finally, the General Assembly had the ability, independent of Chapter 48's internal appeal mechanism, to provide an alternative route of appeal by including Kent County agencies within the APA's case-decision appeal provisions,[40] but did not.  The APA's list of agencies whose case decisions are subject to Superior Court appeal does not include any political subdivision of the State or their departments.[41] Accordingly, the APA does not provide the Schafers an alternate route of appeal.

### B. The Schafers' motion to amend is timely because it relates back to their initial filing.

In the absence of an available appeal, the focus turns to whether the Court should grant the Schafers' motion to amend.  Here, Ching conceded that a timely petition for review on *certiorari* would permit Superior Court review of a DPS decision.  Ching further conceded at oral argument that although the Shafers did not file their original petition until seven months after DPS approved the Plan, exceptional circumstances excused the seven-month delay because the Schafers had no knowledge that DPS had approved the Plan.[42]  These two concessions narrow the analysis to the issue of whether the proposed amendment was timely.

---

[40] *See* 29 *Del. C*. § 10142 (allowing an appeal to the Superior Court of any case decision); *see also* 29 *Del*. C. §10161(a) (providing through further reference that the case decisions of only enumerated agencies may be appealed and including no governmental subdivisions in the list).
[41] *Id.*
[42] Ching conceded at oral argument that the Schafers' original filing was timely as discussed above. To the extent its supplemental briefing seems to retract this concession, the Court applies the original concession because the parties filed their supplements simultaneously, giving neither party the opportunity to address any changes in position.

11

Ching contends the motion was untimely because no exceptional circumstances excuse the Schafers' failure to request review on *certiorari* in their initial filing or within thirty days of that filing.[43] Docket entries demonstrate that the Schafers filed their motion to amend approximately two months (fifty-eight days) after their initial filing.

At the outset, leave to amend pleadings should be freely given in the interests of justice.[44] The claim for relief that the Schafers seek is a narrow review that is only appropriate when: (1) there is a credible claim that a lower tribunal's unlawful decision subjected the petitioner to an adverse final judgment, and (2) there is no other means of review.[45] Here, the Schafers set forth a credible claim in their petition that DPS's final decision constituted legal error. Furthermore, there is no other basis for review because no appeal is available from DPS's final decision.

The substantive review triggered by a writ of *certiorari* is limited "to jurisdictional matters, errors of law, or irregularity of proceedings which appear on the face of the record."[46] At oral argument, the Court asked the parties if a writ of *mandamus* may not be the more appropriate remedy because DPS's decision to approve the Plan required, at most, minimal discretion. DPS's discretion when approving the Plan was narrowly limited by the statutory and code definitions that define a minor subdivision. Both parties, nevertheless maintained at oral argument, and Ching maintained in its supplemental filing, that review on *certiorari*, and not *mandamus*, is the appropriate mechanism. Because some discretion lied in DPS's

---

[43] *See In the Matter of Gunn*, 122 A.3d 1292, 1293 (Del. 2015) (providing for the first time in Delaware decisional law that "exceptional circumstances" as opposed to "appropriate circumstances" are needed to excuse an untimely petition for writ of *certiorari*).

[44] Super. Ct. Civ. R. 15(a).

[45] *The Matter of Butler*, 609 A.2d 1080, 1081 (Del. 1992); *see also Elcorta, Inc. v. Summit Aviation, Inc.*, 528 A.2d 1199, 1201–02 (Del. Super. 1987) (explaining that the court considered timeliness to be a discretionary matter because of the lack of prescribed time limit at common law).

[46] *Butler*, 609 A.2d at 1081 (quoting *Goldstein v. City of Wilmington*, 598 A.2d 149, 152 (Del. 1991).

review and approval of the Plan and the parties stipulate that review on *certiorari* is the appropriate mechanism, the Court will accept that premise and move to the issue of timeliness.[47]

The common law historically provided no time restriction for filing a petition for a writ of *certiorari*.[48] Rather, any untoward delay in filing became a factor considered by the Court when it decided whether to exercise its discretion to issue the writ.[49] Furthermore, there are no statutorily prescribed filing deadlines for a *common law* writ.[50] Nor does any court rule provide a time restriction. As a result, the Court has historically maintained discretion over the issue of timeliness.[51]

More recently, Delaware courts have begun imposing a thirty-day requirement by analogy so as to mirror a typical (although far from uniform)

---

[47] While the Court considers the parties to have stipulated to the appropriateness of review on *certiorari* (subject to the Schafers maintaining that they have a statutory right of *appeal* and Ching's timing, standing, and ripeness arguments), the Court must also independently conclude that this form of review is appropriate before issuing the writ. A writ of *certiorari* provides for review of an agency's quasi-judicial action. While this matter presents a close call, the statute defining DPS's role provides further support for finding *certiorari* to be appropriate. Namely, it charges DPS with the "approval" of a minor subdivision under 9 *Del. C.* § 4810)(a). To approve something, one must first consider it, which involves judicial-like discretion. Furthermore, the approval in this case is the final decision on the matter and there is no avenue of appeal. Finally, there will be at least some record for the Court to review on *certiorari* including the application, its attachments, the plat, and any contemporaneous submission by Ching that DPS considered. *Cf. Couch v. Delmarva Power & Light Co.*, 593 A.2d 554, 560–61 (Del. Ch. 1991) (distinguishing quasi-judicial action of an agency and routine decisions by an operating officer where there is no record to review).

[48] *Elcorta, Inc.*, 528 A.2d at 1201.

[49] *Id.*

[50] *Id.*

[51] *See In re Downes*, 571 A.2d 786, 1989 WL 160434, at *2 (Del. Dec. 12, 1989) (TABLE) (acknowledging the Court's discretion to permit an untimely filing in "appropriate circumstances," rather than "exceptional circumstances"); *see also Petition of Fridge*, 604 A.2d 417, 1991 WL 247811, at *1 (Del. Nov. 20, 1991) (TABLE) (observing that the case did not present an "appropriate circumstance," rather than an "exceptional circumstance," to exercise the court's discretion).

statutory appeal period.[52]  It is likely that this approach found further support in statutorily created rights for review on *certiorari* that separately impose thirty-day requirements.[53]  As to the standard for excusing a late filing, the Delaware Supreme Court decision in *The Matter of Gunn*[54] first imposed the requirement that a petitioner demonstrate exceptional circumstances to file outside of thirty days.  In *Gunn*, however, the Court did not explain what rises to the level of exceptional.[55]

The Schafers filed their initial pleading approximately seven months after DPS approved the Plan, well past any analogous appeal period.  Nevertheless, at oral argument, Ching conceded that the lack of notice of approval qualified as an "exceptional circumstance" to justify the delay in the initial filing.  Ching's timeliness challenge focuses separately on the delay between when the Schafers filed their initial petition and when they moved to amend – a lapse of approximately two months.[56]  Ching contends that this two-month segment of delay bars the amendment because no exceptional circumstances excused it.

In this case, the Court need not determine whether the reason for the delay meets the exceptional circumstances standard.  Rather, the result turns on the relation back principle of Superior Court Civil Rule 15(c).  There, an amendment relates back to the date of the original *pleading* when the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleading.[57]  Although Superior Court Civil Rule 72(c) includes certain

---

[52] *Fridge*, 1991 WL 247811, at *1; *Downs*, 1989 WL 160434, at *2; *Elcorta, Inc.*, 528 A.2d at 1200–01; *McIntosh v. City of Newark*, 2006 WL 1134894, at *1 (Del. Super. Mar. 31, 2006).

[53] *See, e.g.*, 9 *Del. C.* § 1314(a) (granting a right of review by writ of *certiorari* in New Castle County land use decisions requested within thirty days).

[54] 122 A.3d at 1293.

[55] *Id.*

[56] Mot. for Expungement (filed Nov. 7, 2022); *cf.* Mot. to Amend (filed Dec. 28, 2022).

[57] Super. Ct. Civ. R. 15(c)(2); *See* 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1496 (3d ed. 2010) (recognizing that Federal Rule 15 applies to all original pleadings rather than exclusively to complaints).

minimum requirements for a notice of appeal, a notice of appeal nevertheless qualifies as a pleading for purposes of Rule 15(c)'s relation back principle when the amendment seeks a common law writ of *certiorari*.

Here, the proposed amended petition relies upon the same facts and land use laws identified in the original pleading. In fact, the initial petition reads as a detailed declaratory judgment complaint and fully recites the Schafers' position. The proposed amendment adds *only* a new, and significantly narrower theory of review, while the Schafer's requested relief remains unchanged. Namely, they allege identical legal error throughout and in that way provided Ching notice of their contentions from the outset. Ching will suffer no unfair prejudice.[58]

When Ching focuses on this two-month delay, it bases a significant part of its argument on the Delaware Supreme Court's decision in *Gunn*. In *Gunn*, the Supreme Court found a candidate's petition challenging a Board of Canvass's result untimely because his request for relief came (1) later than thirty days after the challenged conduct and (2) included no exceptional circumstances to justify excusing the untimeliness.[59] As explained above, the Court declined to define what constituted exceptional circumstances. Rather, it observed merely that the

---

[58] Ching cites *State Pers. Comm'n v. Howard*, 420 A.2d 135 (Del. 1980), when arguing that Rule 15 does not permit an amendment to a writ of *certiorari* outside of 30 days because a notice of appeal cannot be amended or modified after the expiration of the appeal period. As noted in *Howard*, however, that rule applies only in cases where a party attempts to alter the ground or scope of the appeal after the appeal period in a way that unfairly prejudices the respondent. *Id*. at 138. Here, there is no such attempt or effect, leaving no inconsistency between that "general rule" and modern pleading standards as recognized by Rule 15. Moreover, although the Schafers' initial petition alleged jurisdiction under Section 4818, it read in all other respects as a petition for relief on *certiorari*, though it did not request the writ. *See also Weston v. State*, 554 A.2d 1119, 1119–20 (Del. 1989) (citing *Howard* when recognizing that amending a notice of appeal is appropriate where it does not substantially prejudice the appellee).

[59] *Gunn*, 122 A.3d at 1293.

candidate's seven-month delay in filing the petition for *certiorari* was untimely because he pursued the matter "in the wrong court and sought the wrong remedy."[60]

The Schafers' motion to amend aligns more with the Superior Court's decision in *Haden v. Bethany Beach Police Department*,[61] than *Gunn*. In *Haden*, the respondent moved to dismiss the opposing party's attempted appeal of a municipal decision based on lack of subject matter jurisdiction.[62] The court granted the motion to dismiss in part, because no statutory provision provided the Court jurisdiction to consider an appeal.[63] The court then addressed whether it should grant an alternatively proposed amendment to add a claim for a writ of *certiorari*.[64] Despite much longer than a thirty-day delay, the court explained that Delaware courts recognize that a petition for writ of *certiorari* is the functional equivalent of a notice of appeal.[65] When the court found the amendment timely, it recognized that Delaware courts apply the modern view of pleadings to appeals and noted their reluctance to dismiss them on technicalities absent the threat of unfair prejudice.[66] Because the two claims for relief in *Haden* arose from the same conduct, transaction, and occurrence, the amendment related back to the time of the initial notice of appeal.[67]

The Schafers' amendment similarly relates back to their initial filing because it too arises from the same conduct, transaction, and occurrence alleged in the initial

---

[60] *Id.*; *cf. FMC Corp. v. Special Services Dept.*, 2017 WL 2378002, at *4 (Del. Super. May 31, 2017) (finding exceptional circumstances existed where (1) it was unclear whether a party had a direct right to appeal, and (2) it resulted in no prejudice to the adverse party).

[61] 2014 WL 2964081.

[62] *Id.* at *2.

[63] *Id.* at *5.

[64] *Id.* at *6.

[65] *Id.*

[66] *Id.*

[67] *Id.* The court ultimately found, however, that the amendment was futile because the decision below was not final and there were no errors of law. *Id.* at *7.

pleading.  In Ching's opposition, it identifies no unfair prejudice that will befall it from an amendment that adds only a narrower scope of review than the original pleading.

### C. Ching's standing and ripeness challenges do not demonstrate the amendment's futility.

In addition to jurisdiction, Ching raised two substantive reasons for dismissing the appeal  pursuant to Rule 12(b)(6):  (1) the Schafers' lack of standing, and (2) the matter's ripeness for judicial review.[68]   As explained above, the Court dismisses Schafers' appeal pursuant to Section 4818 on jurisdictional grounds.[69]   Ching's standing and ripeness arguments, however, also apply to its opposition to the Schafers' motion to amend.   With that shift in focus, the inquiry pivots to whether the proposed amendment would be futile.[70]   In answering that question, the Court must determine if the proposed amendment would survive a Rule 12(b)(6) motion.[71]

Here, the Schafers amendment clears the Rule 12(b)(6) hurdle for standing purposes because it adequately alleges aggrieved status.   As the Court recently recognized in *Race Track Car Wash, LLC v. City of Dover Planning Commission, et al.,* a petitioner cannot be expected to make a record before an agency on standing if there was no need or opportunity to do so below.[72]   If DPS committed an error of law, as the Schafers contend, there was no opportunity for them to create a record on standing because there was no hearing to do so.   In situations such as this, a party must demonstrate his or her standing at the time in the proceedings "when it

---

[68] Resp't's Supp. Br'g at 3–4.
[69] As provided *supra,* Section IV(A).
[70] *See Schaffer v. Dixon*, 2023 WL 2493279, at *3 (Del. Super. Mar. 14, 2023) (explaining that leave to amend a complaint should be freely given unless the amendment would be futile – meaning, subject to dismissal under Rule 12(b)(6) for failure to state a claim).
[71] *Id.*
[72] 2019 WL 4200623, at *5 (Del. Super. Sept. 5, 2019), *aff'd*, 277 A.3d 139, 2020 WL 1503260 (Del. Mar. 27, 2020) (TABLE).

first matters."[73]   Accordingly, both parties may submit extraneous materials, contemporaneously with their substantive briefing, to support or contest the Schafers' standing to seek review on *certiorari*.[74]

Finally, Ching contends that the matter is not ripe for review because additional land use review and approval steps must be met before the land is developed.   In support, it relies on the Supreme Court's decision in *JMER Properties*.[75]

In *JMER Properties*, the Delaware Supreme Court reviewed the Court of Chancery's dismissal of a declaratory judgment and injunction action where the petitioner sought to enjoin landowners from building an access ramp to a state highway.[76]   Unlike in the Schafers' case, the petition in *JMER Properties* focused its challenge on  a Delaware Department of Transportation traffic impact study, and not on an approved final plan.  As the Supreme Court emphasized in that decision, the traffic impact study was merely one of many conditions required before submission of the final plan.[77]

In contrast, the Schaffers allege in their petition that DPS approved a final minor subdivision plan that was filed with the Kent County Recorder of Deeds.[78] Although a minor subdivision may differ from a standard subdivision in scope and effect, they do not differ conceptually for purposes of determining ripeness.  The

---

[73] *Id*. at *6.

[74] *See id*. (explaining that the Court must separately and independently review standing on appeal or *certiorari*, which may include considering supplemental information not typically included within the record below).  Even though the review on *certiorari* is significantly more limited than on appeal.  The parties' ability to supplement the record for this limited purpose does not broaden the scope of the Court's substantive review.  *Id.*

[75] Resp't's Supp. Br'g at 3–4.

[76] 2023 WL 1097340, at *1.

[77] *Id*. at *3.

[78] *See* 9 *Del*. *C*. § 4810(b) (providing that upon approval, the plat is filed with the recorder of deeds).

Plan's approval has the same finality as would a standard subdivision approval. As a result, the amended pleading demonstrates that DPS's approval is ripe for review.

## V.     CONCLUSION

For the reasons explained above, Ching's motion to dismiss is **Granted, in part**. The portion of the Schafers' initial petition that seeks to appeal DPS's decision pursuant to 9 *Del. C.* § 4818 is dismissed. The Schafers' motion to amend, however, is **Granted**, and a writ of *certiorari* will issue to Kent County Regional Planning Services. Upon return of the writ and the filing of a response by Ching (and DPS as the deciding agency, if it chooses to participate), the parties are requested to confer and propose a stipulated briefing schedule to address the merits of the Schafers' claim of legal error.

**IT IS SO ORDERED.**

/s/ Jeffrey J Clark
Resident Judge

*Via File & Serve Express*

19